UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
NICHOLAS L.,

                          Plaintiff,          <u>DECISION AND ORDER</u>
                                              1:24-cv-05155-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

       In November of 2021, Plaintiff Nicholas L.[1] applied for Disability

Insurance Benefits under the Social Security Act. The Commissioner of

Social Security denied the application.  Plaintiff, represented by Lewis Bart

Insler, Esq., of counsel, commenced this action seeking judicial review of

the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 11).

       This case was referred to the undersigned on March 17, 2025.

Presently pending is Plaintiff's Motion for Judgment on the Pleadings

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

No. 17). For the following reasons, Plaintiff's motion is due to be granted, and this matter is remanded for further administrative proceedings.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on November 15, 2021, alleging disability beginning January 1, 2018. (T at 215-16).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on July 18, 2023, before ALJ Michael Stacchini. (T at 36-68). Plaintiff appeared with an attorney and testified. (T at 42-58). The ALJ also received testimony from Esperanza Distefano, a vocational expert. (T at 58-67).

### B.    ALJ's Decision

On July 28, 2023, ALJ Stacchini issued a decision denying the application for benefits. (T at 15-35).  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022 (the date last insured). (T at 20).  The ALJ determined that Plaintiff did not engage in substantial gainful activity between January 1, 2018 (the alleged onset date) and the date last insured. (T at 20).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12.

The ALJ concluded that, as of the date last insured, Plaintiff's degenerative disc disease of the lumbar and cervical spine, insomnia, depressive disorder, anxiety disorder, and panic disorder were severe impairments as defined under the Act. (T at 20).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 21).

At step four of the sequential analysis the ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he could sit, stand and walk for 6 hours in an 8 hour workday with regularly scheduled breaks, but was unable to climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs. (T at 23).  Plaintiff could occasionally balance, stoop, kneel, crouch and crawl, but must avoid unprotected heights and hazardous machinery. (T at 23).

The ALJ further found that, as of the date last insured, Plaintiff could understand, remember, and carry out simple routine tasks with regular breaks at approximately 2-hour intervals with decision-making and changes in a work setting requiring only simple, routine, and repetitive tasks. (T at

23).  In addition, he could handle brief and superficial interaction with the public and occasional interaction with supervisors and coworkers, but without tandem tasks. (T at 23).

The ALJ concluded that, as of the date last insured, Plaintiff could not perform his past relevant work as a carpenter. (T at 28).  However, considering Plaintiff's age (43 on the date last insured), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed as of the date last insured. (T at 28).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between the alleged onset date and the date last insured. (T at 29).

On May 6, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing

a Complaint on July 8, 2024. (Docket No. 1).  On October 18, 2024, Plaintiff

filed a motion for judgment on the pleadings, supported by a memorandum

of law. (Docket Nos. 17, 18).  The Commissioner interposed a brief on

January 14, 2025, opposing the motion and requesting judgment on the

pleadings. (Docket No. 20).  On January 21, 2025, Plaintiff submitted a

reply memorandum of law in further support of his motion. (Docket No. 21).

## II.APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566

F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings,

which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"

and "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the
> Commissioner then determines whether there is other work
> which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.

Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff contends that the Commissioner's assessment of his mental and physical limitations is not supported by substantial evidence and is not based on an adequately developed record.

### A.    *Mental Limitations*

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

Here, as noted above, the ALJ determined that, as of the date last insured, Plaintiff could understand, remember, and carry out simple routine tasks with regular breaks at approximately 2-hour intervals with decision making and changes in a work setting requiring only simple, routine, and repetitive tasks. (T at 23).  In addition, the ALJ concluded that Plaintiff could handle brief and superficial interaction with the public and occasional interaction with supervisors and coworkers, but without tandem tasks. (T at 23).

After a thorough review of the record the Court cocnlides that the ALJ's assessment of Plaintiff's ability to meet the mental demands of basic work activity cannot be sustained even under the deferential standard of review applicable here.

In May of 2022, Dr. Konstantinos Tsoubris performed a consultative psychiatric examination.  Dr. Tsoubris diagnosed major depressive disorder (recurrent, severe) and panic disorder. (T at 744).  He opined that Plaintiff would have marked limitation with respect to interacting adequately with supervisors, co-workers, and the public; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. (T at 744).

Dr. Alison Murphy performed a consultative psychiatric evaluation in November of 2022. She diagnosed panic attacks with agoraphobia. (T at 816).  Dr. Murphy opined that Plaintiff would have marked limitation with respect to interacting adequately with supervisors, co-workers, and the public; sustaining an ordinary routine and regular attendance at work; and regulating emotions, controlling behavior, and maintaining well-being. (T at 815).

The ALJ found that Plaintiff had only moderate impairment in his ability to interact with others and adapt or manage himself. (T at 22).

In reaching this conclusion, the ALJ found the opinions of Dr. Murphy and Dr. Tsoubris unpersuasive. (T at 27).  The ALJ considered the consultative examiners' assessment of marked impairments "not consistent with minimal mental health treatment, the benign examination findings and the full range of activities that [Plaintiff] was able to perform." (T at 27).  The ALJ's rationale is flawed and inadequate. Here's why.

First, the ALJ took no apparent account of the significant findings by both psychiatric professionals who examined Plaintiff (at the request of the Commissioner) each of whom shared the view that he had marked impairment in his ability to meet the mental demands of basic work activity. The failure to consider this consistency was error. *See Shawn H. v. Comm'r*

*of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at \*7 (D. Vt. July 14, 2020) ("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec*., No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at \*7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023) (collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Second, the ALJ erred by failing to request a functional assessment from at least one of Plaintiff's treating providers.

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326

F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

Further, "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating providers are particularly probative in claims involving mental health. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Although the Commissioner no longer applies the "treating physician's rule," the duty to develop the record, which includes re-contacting treating providers when needed to afford the claimant a full and fair hearing based on an adequately developed record, applies to claims governed by the new medical opinion regulations. *See, e.g., Snoke v. Comm'r of Soc. Sec*., No. 22-CV-3708 (AMD), 2024 WL 1072184, at *9 (E.D.N.Y. Mar. 12, 2024); *Fintz v. Kijakazi*, No. 22-CV-00337(KAM), 2023 WL 2974132, at *7 (E.D.N.Y. Apr. 15, 2023); *Cheryl W. v. Kijakazi*, No. 3:22-CV-1476 (VAB), 2024 WL 1012923, at *5 (D. Conn. Mar. 8, 2024); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 316 (E.D.N.Y. 2023); *see also Ramos v. Comm'r of Soc. Sec*., No. 20-CV-9436 (OTW), 2023 WL 3380660, at *2 (S.D.N.Y. May 11, 2023).

In the present case, Plaintiff treated with Amy Berretta, a psychiatric mental health nurse practitioner.  At an initial visit in December of 2022, Plaintiff presented as "unkempt," demonstrated poor eye contact, depressed affect, and "fair" insight and judgment. (T at 832).  NP Berretta

diagnosed chronic panic syndrome, panic attacks, generalized anxiety disorder, and agoraphobia with panic attacks. (T at 832).  She prescribed Abilify, an anti-psychotic. (T at 832).

Plaintiff also treated with Lori Musorrafiti, a family nurse practitioner, who served as his primary care provider.  Treatment notes from NP Musorrafiti consistently describe Plaintiff as experiencing depression and anxiety, including panic attacks. (T at 827, 834-35, 841-42, 856, 865, 871, 874, 880, 883, 887, 892, 895, 899).

The ALJ characterized the mental status examinations as "generally benign." (T at 27).

While Plaintiff was generally described as cooperative and appropriate during his brief visits with supportive medical professionals, notably the symptoms of depression and anxiety, including panic attacks, are extensively documented.  *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

Moreover, the question of whether and to what extent Plaintiff's impairments, including (in particular) his panic attacks, would be aggravated by exposure to the demands of basic work activity is the key question at issue. *See Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Both psychiatric consultative examiners believed Plaintiff would experience marked impairment if exposed to such demands. (T at 744, 815).  The ALJ discounted the shared views of the consultative examiners and relied on his lay interpretation of the treatment records without seeking a functional assessment from the medical professionals who treated Plaintiff and created those records.  This was error requiring remand. *See Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011)("It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the

treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient.")(quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y.1991)(emphasis original); *see also Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(noting that "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians")(citing *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

There is some support for the ALJ's decision found in the opinions of the non-examining State Agency review physicians, Dr. S. Juriga and Dr. C. Walker. Dr. Juriga opined that Plaintiff had moderate impairment in his ability to interact with others and adapt or manage himself. (T at 75).  Dr. Walker also assessed some moderate limitation in Plaintiff's ability to interact with others and adapt or manage himself. (T at 114).

Although the ALJ found these opinions persuasive (T at 28), this is not sufficient to sustain the decision.  All the medical opinions of record share the assessment that Plaintiff had more than mild impairment in his ability to interact with others and adapt/manage himself. The only question is the extent of the impairment. Both medical professionals, who examined

Plaintiff, found that he had marked limitations. And neither of the medical professionals who treated Plaintiff were asked for their views.  Under these circumstances, the ALJ erred by relying almost exclusively upon the State Agency physicians' assessments.  A remand is required for reconsideration of the evidence concerning Plaintiff's mental impairments after further development of the record.

  B.  *Physical Limitations*

  As noted above, the ALJ determined that, as of the date last insured, Plaintiff retained the RFC to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he could sit, stand and walk for 6 hours in an 8-hour workday with regularly scheduled breaks, but was unable to climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs. (T at 23).  Plaintiff could occasionally balance, stoop, kneel, crouch and crawl, but must avoid unprotected heights and hazardous machinery. (T at 23).

  Contrary to the ALJ's assessment of Plaintiff's mental limitations, the ALJ's assessment of Plaintiff's physical limitations is supported by substantial evidence.

  Two consultative examiners, Drs. Healy and Mercurio, assessed no more than moderate limitations in Plaintiff's ability to meet the physical

demands of basic work activity. (T at 27, 562-63, 819-20). *See Jordan v.*
*Comm'r of Soc. Sec.*, No. 16-CV-9634 (KHP), 2018 WL 1388527, at *10
(S.D.N.Y. Mar. 19, 2018)("Moreover, a number of courts have found that
'moderate' limitations for standing, walking, sitting, and lifting are consistent
with the ability to do light work.")(collecting cases); *see also Guzman v.*
*Comm'r of Soc. Sec.*, No. 21-CV-6538 (KHP), 2022 WL 3013108, at *6
(S.D.N.Y. July 29, 2022); *Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-
CV-01055-MJR, 2021 WL 5596416, at *5 (W.D.N.Y. Nov. 30,
2021)("[C]ourts within this Circuit have consistently held that mild and
moderate limitations, such as those assessed by Dr. Liu, are consistent
with an RFC for light work.").

The ALJ also reasonably read the record as supporting the ability to
perform a range of light work.  While Plaintiff had reduced ranges of motion
in the lumbar spine, he also demonstrated normal gait, full motor strength,
and generally full ranges of motion in the extremities. (T at 27, 530, 548,
562-63, 819-20, 826, 843, 857, 861, 865).

To the extent Plaintiff argues that the ALJ should have placed greater
weight on his subjective complaints of disabling physical pain, this
argument is unavailing.  The ALJ relied on the medical opinion evidence
(including the assessments of two consultative examiners) and a

reasonable reading of the treatment record, as set forth above, to reach the conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully supported by the evidence of record. (T at 23-26). In addition, the ALJ considered Plaintiff's activities, which included shopping, driving, reading, and performing household chores. (T at 27, 562, 744, 806, 815, 819).

Although Plaintiff suffers from physical pain and limitation the ALJ did not dismiss Plaintiff's subjective complaints and, instead, found him limited to a reduced range of light work. (T at 23).

However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the conclusion that Plaintiff retained the RFC to meet the physical demands of a reduced range of light work, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.

This is sufficient to sustain this aspect of the ALJ's decision under the deferential standard of review applicable here. *See Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31,

2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

### C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

For the reasons discussed above, the Court finds a remand necessary for further development of the record and reconsideration of the impact of Plaintiff's mental impairments on his ability to meet the mental demands of basic work activity.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED, and this matter is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.


Dated: March 24, 2025                          *s / Gary R. Jones*
                                               GARY R. JONES
                                               United States Magistrate Judge